CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed October 9, 2026**

Michelle V. Larson
**United States Bankruptcy Judge**

---

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| **In re:** | § | **CASE NO. 24-32568-mvl7** |
| | § | **(CHAPTER 7)** |
| **JASON CAMPBELL** | § | |
| | § | |
| **Debtor.** | § | |

---

| | | |
|---|---|---|
| **NY BRAVEST FEDERAL CREDIT UNION** | § | **ADVERSARY NO. 25-03005-mvl** |
| | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **JASON CAMPBELL** | § | |
| | § | |
| **Debtor.** | § | |

**MEMORANDUM OPINION, FINDINGS OF FACT AND CONCLUSIONS OF LAW**

## I. INTRODUCTION

The Court conducted a trial on the *Complaint to Determine Dischargeability of Debt* (the "**Complaint**") filed by Plaintiff NY Bravest Federal Credit Union (the "**Plaintiff**" or "**NY Bravest**") against Debtor-Defendant Jason Campbell (the "**Debtor**").[1] By its Complaint, the Plaintiff seeks a determination regarding whether: (1) the Plaintiff's liquidated claim against the Debtor in the amount of $48,007.00 is nondischargeable under 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(6) and (2) the Debtor is entitled to a discharge under 11 U.S.C. § 727(a)(4)(A).

This Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334. This is a core proceeding under 28 U.S.C. § 157(b).

## II. FINDINGS OF FACT

On or about September 28, 2022, the Debtor applied for a car loan from the Plaintiff to purchase a 2019 Chevrolet Silverado (the "**Vehicle**" or the "**Property**"). In the Debtor's loan application,[2] he stated that he was employed by the Fire Department of the City of New York, where he earned $11,666.00 per month. The Debtor and the Plaintiff executed a Loan and Security Agreement and Disclosure Statement (the "**Loan Agreement**"),[3] which provided that the "[Debtor] [was] giving [the Plaintiff] a security interest in … the Property described below." The Loan Agreement then described the Vehicle, a 2019 Chevrolet Silverado, and its VIN: 1GCUYGED7KZ110668. Additionally, the Loan Agreement included provisions related to the Plaintiff's security interest, stating "if [the Debtor's] state issues a title for the Property, [the Debtor] promise[s] to have [the Plaintiff's] security interest shown on the title." The Plaintiff then

[1] ECF No. 1. All "**ECF No.**" references herein are to the above-captioned Adversary Proceeding unless otherwise noted.
[2] ECF No. 12-1.
[3] ECF No. 12-2.

issued a joint check in the amount of $36,527.41 to ICJ, LLC, the dealer, and the Debtor (the "**Vehicle Loan**").[4]

The Debtor purchased the Vehicle from a dealer in New York.[5] Although the Debtor worked in New York, he testified that at the time he purchased the Vehicle his residence was in Texas. At the trial, Tonya Frasier ("**Frasier**"),[6] testified that the Plaintiff was unaware of the Debtor's status as a Texas resident at the time the Vehicle Loan was executed. Frasier testified that, upon learning that the Vehicle would instead be titled in Texas, she contacted the Debtor to have him provide the Texas title in order to secure its interest in the Vehicle.

On November 22, 2022, the Debtor stated to Frasier that he had not received a Texas title, but that he would send it to the Plaintiff when he received it. On December 5, 2022, Frasier again contacted the Debtor about the status of the Texas title, and the Debtor restated that he would send it when he received it. Frasier contacted the Debtor once again on February 4, 2023, to inquire about the Texas title. This time, the Debtor informed the Plaintiff that he had retired and that he would be sending in a payment to pay off the Vehicle in full.[7] However, the Debtor did not thereafter pay off the Vehicle Loan in full. Therefore, the Plaintiff continued its efforts to obtain the Texas title, and again, on March 1, 2023, the Debtor stated he would mail in the Texas title.[8]

The Plaintiff continued efforts to obtain the Texas title over the next several months, including mailing a delinquency letter and two demand letters to the Debtor requesting the Texas title.[9] Ultimately, those efforts were unsuccessful, and Frasier testified that the Plaintiff chose to

---

[4] ECF No. 12-3.
[5] ECF No. 12-5.
[6] Frasier testified at the trial as a representative of the Plaintiff that personally dealt with Debtor's Vehicle Loan.
[7] The Debtor testified that he did not state that he would send in payment in full for the Vehicle, but that he informed them of his financial difficulties. However, in his Answer to the Complaint, the Debtor admitted the allegation that "[o]n February 4, 2023, [Debtor] stated he had retired and would be sending in payoff to [] pay the vehicle in full." ECF Nos. 1, 9.
[8] ECF Nos. 1, 9.
[9] ECF No. 12-6.

pursue repossession of the Vehicle. However, sometime in November 2023, during the course of the Plaintiff's attempt at repossession, it learned from its repossession company that the Vehicle had been sold on or about August 29, 2023.[10] While the record is unclear as to the exact date that the Debtor sold the Vehicle, it is clear that the Debtor sold the Vehicle without the Plaintiff's consent, no later than August 29, 2023[11]—thereby depriving the Plaintiff of the Vehicle serving as collateral for the Vehicle Loan. The Debtor did so without notifying the Plaintiff and testified that he did not inform the Plaintiff he sold the Vehicle because he knew it would want the proceeds from the sale. It was not until months later when he spoke with Frasier that he admitted he sold the Vehicle and expressed remorse for selling the Plaintiff's collateral.[12]

After learning that the Debtor had sold the Vehicle, Frasier testified that she coordinated with the Debtor to modify the loan to an unsecured loan that was finalized in May 2024.[13] Frasier testified that the Plaintiff was obligated under National Credit Union Administration regulations to reclassify the Vehicle Loan to accurately reflect the Loan's unsecured status once the collateral securing the Vehicle Loan was sold. The Vehicle Loan was combined into another unsecured loan that the Debtor had with the Plaintiff (the "**Modified Loan**").[14] The Debtor made payments on the Modified Loan for several months.[15] Ultimately, the Debtor filed for bankruptcy on August 28, 2024, and listed the Plaintiff as an unsecured creditor in the amount of $48,007.00.[16] When filing,

---

[10] ECF No. 12-4.
[11] *Id.*
[12] The Debtor testified that the majority of the proceeds went to the Plaintiff; however, the Court found this portion of the Debtor's testimony lacked credibility. While the Debtor indicated on his amended SOFA that he sold the Vehicle for $25,000 [Bankruptcy ECF No. 41], there is no indication that the loan balance owed to the Plaintiff decreased by any amount near that. At the time the Vehicle Loan was reclassified in May 2024 to an unsecured loan, the loan balance was $32,788.61.
[13] ECF No. 29-1.
[14] *Id.*
[15] *See* ECF No. 29-2.
[16] Bankruptcy ECF No. 1.

the Debtor failed to disclose the sale of the Vehicle in response to Question 18 of the Statement of Financial Affairs ("**SOFA**").[17]

On February 3, 2025, the Plaintiff filed its Complaint objecting to the Debtor's discharge and the dischargeability of the Plaintiff's claim.[18] On March 13, 2025, the Debtor filed the *Debtor's Response to Complaint to Determine Dischargeability of Debt*.[19] That same day, the Debtor also filed an amended SOFA in which he corrected his answer to Question 18 to state that he: (1) sold the Vehicle in an arm's length transaction for $25,000; (2) did not remember the name of the buyer; and (3) did not have any documentation of the sale.[20]

## III. CONCLUSIONS OF LAW

By the Complaint, the Plaintiff seeks a judgment that: (1) excepts its debt from discharge pursuant to §§ 523(a)(2)(A) and 523(a)(6); and that denies the Debtor a discharge under § 727(a)(4)(A). The Supreme Court has commented that "[o]ne of the 'main purposes' of the federal bankruptcy system is 'to aid the unfortunate debtor by giving him a fresh start in life, free from debts, except of a certain character.'" *Lamar, Archer & Cofrin, LLP v. Appling*, 584 U.S. 709, 715 (2018) (quoting *Stellwagen v. Clum*, 245 U.S. 605, 617 (1918)). The Fifth Circuit has held that exceptions to a debtor's discharge "must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start." *Cowin v. Countrywide Home Loans, Inc. (In re Cowin)*, 864 F.3d 344, 349 (5th Cir. 2017) (quoting *Hudson v. Raggio & Raggio, Inc. (In re Hudson)*, 107 F.3d 355, 356 (5th Cir. 1997)). Thus, the Plaintiff bears the burden of proving that its debt is nondischargeable or that the Debtor is not

---

[17] *Id.* Question 18 of the Statement of Financial Affairs asks the Debtor to state whether or not he has sold, traded, or otherwise transferred any property within two years before the petition date.
[18] ECF No. 1.
[19] ECF No. 9.
[20] Bankruptcy ECF No. 41.

entitled to a discharge by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 287–90 (1991); *In re Watters*, Case No. 20-30553, Adv. No. 20-3088, 2021 WL 3744408, at *8 (Bankr. N.D. Tex. Aug. 24, 2021).

### A. Count I – False Representation or Actual Fraud (11 U.S.C. § 523(a)(2)(A))

In Count I, the Plaintiff contends that the Debtor owes a debt to the Plaintiff for money, property, services, or an extension, renewal, or refinancing of credit obtained by a false representation or actual fraud.[21] Section 523(a)(2)(A) excepts from discharge a debt "for money, property, services, or extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud." 11 U.S.C. § 523(a)(2)(A). To establish nondischargeability based on a false representation, the Plaintiff must prove that: (1) the Debtor made a representation; (2) the Debtor knew the representation was false; (3) the Debtor made the representation with the intent to deceive the Plaintiff; (4) the Plaintiff actually and justifiably relied on the representation; and (5) the Plaintiff sustained a loss as a proximate result of its reliance. *Gen Elec. Cap. Corp. v. Acosta (In re Acosta)*, 406 F.3d 367, 372 (5th Cir. 2005). A debtor's intent to deceive may be inferred from the totality of the circumstances. *See id.*

Section 523(a)(2)(A) also encompasses "actual fraud," which is not limited to fraud accomplished through a false representation. *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 356, 359–60 (2016). Actual fraud may therefore encompass fraudulent schemes, including certain fraudulent transfers, even when the debtor makes no representation to the creditor. *Id.* at 360–61. But whether premised on a false representation or actual fraud, § 523(a)(2)(A) requires a connection between the fraudulent conduct and the debt sought to be excepted from discharge: the money, property, services, or credit must have been "obtained by" the fraud. *See id.* at 365–66. Thus, conduct

[21] ECF No. 1 at 3.

occurring only after a debtor has obtained the money or credit generally cannot establish that the preexisting debt was obtained by the later conduct.

The Plaintiff's claim that the Vehicle Loan should be excepted from the discharge based on the Debtor's false representations fails for several reasons. First, the representations concerning the Texas title and repayment of the Vehicle Loan occurred only after the Plaintiff had already extended the Vehicle Loan. At issue were the following representations made by the Debtor: (1) that he had not received a Texas title; (2) that he would mail in the Texas title when he received it; and (3) that he had retired and would send in payment in full for the Vehicle Loan. Each of these representations were made after the Vehicle Loan was executed. Because the Plaintiff had already extended the credit at issue before those representations were made, the representations could not have induced the Plaintiff to make the Vehicle Loan and therefore cannot render that debt nondischargeable under § 523(a)(2)(A).

The Plaintiff also relies on the Debtor's promise in the Loan Agreement to have the Plaintiff's security interest shown on the Vehicle's title.[22] That promise preceded the extension of credit, but the Plaintiff did not meet its burden to prove that, when the Debtor executed the Loan Agreement, he did not intend to perform that obligation. The Debtor's subsequent failure to provide a title allowing the Plaintiff to perfect its lien, without sufficient evidence of fraudulent intent at the time the promise was made, does not establish that the Vehicle Loan was obtained by a false representation within the meaning of § 523(a)(2)(A).

The Plaintiff alternatively contends that the Debtor committed actual fraud by selling the Vehicle without the Plaintiff's consent and retaining the proceeds from that sale. Even assuming that the Debtor's conduct in disposing of and concealing the sale of the Plaintiff's collateral

---

[22] ECF No. 12-2.

constituted actual fraud, the Plaintiff has not established the causal relationship required by § 523(a)(2)(A). The Plaintiff extended the Vehicle Loan in September 2022. The Debtor did not sell the Vehicle until approximately August 2023. Thus, the conduct upon which the Plaintiff relies occurred after the Debtor had already obtained the money giving rise to the Vehicle Loan. Therefore, the Plaintiff did not extend the Vehicle Loan as a result of the Debtor's later sale or concealment of the Vehicle.

As set forth below, this conclusion does not determine whether the Debtor's later disposition of the Vehicle injured the Plaintiff's property rights. Section 523(a)(2)(A) addresses debts obtained by fraud, whereas § 523(a)(6) separately addresses debts arising from willful and malicious injury. The Debtor's post-loan conduct is more properly considered under § 523(a)(6).

Accordingly, the Plaintiff failed to establish by a preponderance of the evidence that the Vehicle Loan was obtained by false pretenses, a false representation, or actual fraud. The Plaintiff's request to except the Vehicle Loan from discharge under § 523(a)(2)(A) is therefore DENIED.

**B. Count II – Willful and Malicious Injury (11 U.S.C. § 523(a)(6))**

In Count II, the Plaintiff asserts that the Debtor committed conversion when he sold the Vehicle the Plaintiff had a security interest in and failed to remit the proceeds to the Plaintiff. Under Section 523(a)(6), a debt may be declared nondischargeable for "willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). An injury arising from negligently inflicted conduct or intentional acts that merely happen to cause injury is not sufficient to be excepted from the discharge under § 523(a)(6). *Kawaauhau v. Geiger*, 523 U.S. 57, 61–62 (1998); *In re Rifai*, 604 B.R. 277, 327 (Bankr. S.D. Tex. 2019). An injury is "willful" if it is a "deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau*, 523 U.S. at 61 ("Had Congress meant to exempt debts resulting from unintentionally

inflicted injuries, it might have described instead 'willful acts that cause injury.'"); *In re Smith*, 659 B.R. 500, 508 (Bankr. E.D. Tex. 2024). "Willful," as used in § 523(a)(6), "modifies the word 'injury,'" indicating that nondischargeability requires a deliberate or intentional *injury*.

The Fifth Circuit has provided that an injury is "willful and malicious" where a debtor's conduct gives: (1) an objective substantial certainty of injury arising from an intentional act; or (2) a subjective motive to cause harm to the plaintiff. *Matter of Miller*, 156 F.3d 598, 603–04 (5th Cir. 1998). Because § 523(a)(6) is satisfied if either the objective or subjective standard is met, the Court need not determine whether the Debtor acted with a subjective motive to injure the Plaintiff. The Court instead concludes that the Plaintiff established by a preponderance of the evidence that the Debtor's intentional conduct was objectively substantially certain to injure the Plaintiff.

The wrongful conversion of a creditor's collateral may constitute a willful and malicious injury under § 523(a)(6). *See In re Modicue*, 926 F.2d 452, 453 (5th Cir. 1991); *Matter of Zolnier*, No. 21-20260, 2021 WL 5778461, at *4 (5th Cir. Dec. 6, 2021). As the Court noted in *Watters*, not every conversion necessarily satisfies § 523(a)(6). Most often, claims for willful and malicious injury are only successful in the context of tort claims. 2021 WL 3744408, at *18. An act of conversion may be innocent or technical and therefore lack the intent necessary for nondischargeability. *See Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 332 (1934); *Tegeler v. Educational Credit Mgmt. Corp. (In re Tegeler)*, 586 B.R. 598, 692–93 (Bankr. S.D. Tex. 2018). The relevant inquiry remains whether the circumstances surrounding the conversion establish that the Debtor's intentional conduct was substantially certain to injure the Plaintiff.

The circumstances here establish more than an innocent or technical conversion. The Debtor voluntarily granted the Plaintiff a security interest in the Vehicle to secure the Vehicle Loan. The Debtor then sold the Vehicle without the Plaintiff's knowledge or consent. The Debtor

admitted that he knew the proceeds from the sale of the Vehicle were supposed to go to the Plaintiff. Nevertheless, the Debtor did not remit the sale proceeds to the Plaintiff and instead spent those proceeds. Nor did the Debtor notify the Plaintiff of the sale. Most significantly, the Debtor admitted that he withheld the fact of the sale from the Plaintiff *because* he knew that the Plaintiff would want the sale proceeds.

Those actions were objectively and substantially certain to injure the Plaintiff's rights in its collateral. The relevant injury is not merely that the Debtor might ultimately fail to repay the Vehicle Loan. Rather, the injury is the deprivation of the Plaintiff's rights in the property securing that loan. *See Modicue*, 926 F.2d at 453 (finding that the creditor was "entitled to the value of the collateral denied it by [the debtor's] wrongful actions"). A reasonable person who knows that a creditor claims a security interest in a vehicle cannot sell that vehicle without the creditor's consent, retain and spend the proceeds, and conceal the sale without recognizing that those actions will deprive the creditor of the property securing its debt. That injury is not merely a possible or probable consequence of the Debtor's conduct. It is the direct and substantially certain consequence of disposing of the collateral and withholding the value received in exchange for it.

The Fifth Circuit's decision in *Zolnier* supports this conclusion. There, the creditor held a security interest in the debtors' inventory, and the debtors had agreed not to remove encumbered inventory outside the ordinary course of business without notifying the creditors. *Zolnier*, 2021 WL 5778461, at *1, *4. The debtors nevertheless removed property subject to the creditor's lien without providing notice. *Id.* at *4. The Fifth Circuit concluded that the debtor "willfully and maliciously injured" the creditor under § 523(a)(6) "by converting his collateral." *Id.* (citing *Modicue*, 926 F.2d at 453). The same principle applies here. The Debtor knew that the Vehicle

secured the Plaintiff's loan, intentionally disposed of that collateral without the Plaintiff's consent, and concealed the sale from the Plaintiff.

The Debtor's own testimony further distinguishes this case from one involving an inadvertent or technical interference with a creditor's collateral. The Debtor did not merely sell the Vehicle and mistakenly fail to account for the proceeds. He knew that Plaintiff would demand the proceeds if it learned of the sale and, for that very reason, chose not to disclose the sale.[23] The Court need not find that his purpose was to harm the Plaintiff. Under the objective standard, it is sufficient that the intentional acts he committed were substantially certain to cause the injury that occurred. *See Matter of Miller*, 156 F.3d 598, 603–04 (5th Cir. 1998).

The fact that the Debtor may have intended to eventually repay some or all of the Vehicle Loan does not alter this conclusion. Section 523(a)(6) focuses on the injury caused by the Debtor's intentional conduct, and the injury here occurred when the Debtor intentionally deprived the Plaintiff of its collateral. *See Modicue*, 926 F.2d at 453. Thus, even accepting the Debtor's contention that some portion of the proceeds was later used to make payments to the Plaintiff (which was not proven), that fact would not eliminate the injury caused by the conversion. It may bear on the amount of the Plaintiff's resulting damages, but it does not change the objectively and substantially certain consequence of the Debtor's decision to sell the Plaintiff's collateral without consent, retain and spend the proceeds, and conceal the sale.

Accordingly, the Court finds that the Debtor's conversion of the Vehicle constituted a willful and malicious injury to the Plaintiff under § 523(a)(6).

---

[23] The instant case is distinguishable from *Watters* in that the evidence in *Watters* indicated that the creditor knew of the sales of its collateral (which were relatively small) and that such sales were to stave off a company's bankruptcy. 2021 WL 3744408, at *18.

The Plaintiff's later agreement to the Modified Loan does not alter this conclusion. After learning that the Vehicle had been sold, the Plaintiff reclassified the Vehicle Loan as unsecured and combined it with another unsecured loan owed by the Debtor. The Debtor contends that, by doing so, the Plaintiff relinquished the secured status upon which its § 523(a)(6) claim depends. The Court disagrees.

The relevant inquiry concerns the Plaintiff's rights at the time of the Debtor's injurious conduct. The Debtor sold the Vehicle while the Loan Agreement granted the Plaintiff a security interest in the Vehicle. The Plaintiff did not know of or consent to the sale. It learned only later, while attempting to repossess the Vehicle, that the collateral had already been sold. The Plaintiff's subsequent decision to modify its records and treat the remaining obligation as unsecured did not retroactively eliminate the rights that the Debtor had already injured.

*In re Best* illustrates this distinction. *See In re Best*, 109 F. App'x 1, 6–7 (6th Cir. 2004). There, an unsecured creditor brought a § 523(a)(6) action when the debtors disposed of their assets and used the proceeds to pay other creditors. *Id.* Because the creditor possessed no lien or other superior right in those assets, the Sixth Circuit concluded that the debtors had not invaded the creditor's legal rights for purposes of § 523(a)(6). *Id.* The court expressly distinguished the situation presented by a secured creditor, explaining that if the creditor were "a secured creditor, using secured assets (or the proceeds from selling such assets) to pay unsecured creditors could have invaded his rights." *Id.* at **7.

That distinction applies here. Unlike the creditor in *Best*, the Plaintiff held a security interest in the specific property that the Debtor sold. The injury therefore occurred when the Debtor disposed of the Vehicle without the Plaintiff's consent and thereby deprived the Plaintiff of its rights in the collateral. The Plaintiff's later acceptance of the Modified Loan and reclassification

as unsecured occurred after that injury; it did not transform the Plaintiff retroactively into an unsecured creditor *at the time of the conversion*.

Again, the record does not establish that the Plaintiff consented to, or acquiesced in, the Debtor's sale of the Vehicle. The Plaintiff repeatedly sought the Vehicle's title and ultimately attempted to repossess the Vehicle. It was during that repossession that the Plaintiff discovered that the Debtor had already sold the Vehicle. Only after discovering that the collateral no longer existed did the Plaintiff modify the Vehicle Loan. The Plaintiff did not voluntarily surrender its collateral and thereafter complain of an injury. The Debtor disposed of the collateral without the Plaintiff's consent; the Plaintiff *then* altered the loan to reflect the resulting absence of collateral.

Accordingly, the Plaintiff's post-conversion modification and reclassification of the Vehicle Loan to the Modified Loan did not waive or otherwise extinguish its claim under § 523(a)(6).

Having concluded that the Debtor willfully and maliciously injured the Plaintiff by converting its collateral, the Court must determine the amount of the debt attributable to that injury. Section 523(a)(6) "is based on tort principles rather than contract" and is "designed to compensate the injured party for the injury suffered." *Modicue*, 926 F.2d at 453. Accordingly, "the appropriate measure for non-dischargeability under § 523(a)(6) is an amount equal to the injury caused by the debtor rather than any other sum owed by the debtor on a contractual basis." *Id.*; *see also Zolnier*, 2021 WL 5778461, at *5 (5th Cir. 2021). In the context of converted collateral, the creditor is entitled to the value of the collateral denied to it by the debtor's wrongful conduct. *Modicue*, 926 F.2d at 453.

In *Zolnier*, the Fifth Circuit concluded that it is the creditor's burden to prove the value of the converted collateral at the time the conversion occurred. 2021 WL 5778461, at *5. Although

the debtor had willfully and maliciously converted the creditor's collateral, the creditor failed to establish the amount of its nondischargeable claim because it presented no evidence of the collateral's value at the time of conversion. *Id.* The amount of the underlying contractual obligation, standing alone, does not establish the amount excepted from discharge under § 523(a)(6). *Id.*; *see Modicue*, 926 F.2d at 453.

Here, the Plaintiff presented evidence establishing the value of the property converted by the Debtor. The Debtor disclosed in his amended Statement of Financial Affairs that he sold the Vehicle for $25,000.[24] The Debtor likewise testified that he received $25,000 from the sale. The sale itself therefore provides contemporaneous evidence of the Vehicle's value at the time of conversion. That testimony was unrebutted.

The Debtor testified that a majority of the $25,000 in proceeds ultimately went to the Plaintiff. The Court does not find that testimony credible. The Debtor produced no record of any substantial payment corresponding to the sale proceeds, and the payment history does not reflect a reduction in the Vehicle Loan approaching the amount the Debtor claims to have remitted. Indeed, when the Vehicle Loan was reclassified in May 2024, approximately nine months after the sale, $32,788.61 remained outstanding.[25] The Court therefore finds that the Plaintiff has established by a preponderance of the evidence that the Debtor's conversion caused an injury of $25,000.

The remainder of the Plaintiff's $48,007.00 claim is not excepted from discharge under § 523(a)(6). That amount reflects the Modified Loan, which combined the remaining balance of the Vehicle Loan with a separate unsecured obligation owed by the Debtor. Section 523(a)(6) excepts from discharge debts arising from the willful and malicious injury, not the entirety of an otherwise

---

[24] ECF No. 29-4.
[25] ECF No. 29-2.

contractual obligation. *See Modicue*, 926 F.2d at 453. Because the Plaintiff established that the Debtor's conversion deprived it of collateral valued at $25,000, but did not establish that the remaining balance of the Modified Loan resulted from that conversion, the Court concludes that $25,000 of the Plaintiff's claim is nondischargeable under § 523(a)(6).

Accordingly, the Plaintiff's request for determination of nondischargeability under § 523(a)(6) is GRANTED IN PART, and $25,000 of the Plaintiff's claim against the Debtor is excepted from discharge.

**C. Count III – False Oath or Account (11 U.S.C. § 727(a)(4)(A))**

In Count III, the Plaintiff asked the Court to deny the Debtor's discharge because the Debtor failed to disclose the sale of the Vehicle on Question 18 of the SOFA.[26] Section 727(a)(4)(A) provides that a debtor shall be denied a discharge if "the debtor knowingly and fraudulently, in or in connection with the case … made a false oath or account." 11 U.S.C. § 727(a)(4)(A). To prevail, the Plaintiff must prove by a preponderance of the evidence that: (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case. *Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 178 (5th Cir. 1992). An omission from a debtor's schedules or statement of financial affairs may constitute a false oath. *Id.*

A false oath is material "if it bears a relationship to the [debtor's] business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of his property." *Id.* Materiality does not depend solely on the value of the omitted property or whether the omission caused detriment to creditors. *Id.*

[26] ECF No. 29-3.

Fraudulent intent may be established through circumstantial evidence, and reckless indifference to the truth may support the requisite intent. *In re Sholdra*, 249 F.3d 380, 382–83 (5th Cir. 2001). A debtor's subsequent amendment of a false schedule or statement of financial affairs does not, by itself, negate a knowingly false oath. *Id.* at 382. Nevertheless, because denial of discharge requires the false oath to have been made knowingly and fraudulently, the Court must determine from the totality of the circumstances whether the Plaintiff has established the requisite fraudulent intent.

The Debtor's original SOFA contained a false oath. Question 18 required the Debtor to disclose certain property transferred within two years before the petition date. Although the Debtor had sold the Vehicle for $25,000 during that period, he did not disclose the sale. Accordingly, because the SOFA was signed under penalty of perjury, the omission constituted a false statement under oath. *See Beaubouef*, 966 F.2d at 178.

The Court further finds that the Debtor knew the answer was false. The Debtor personally sold the Vehicle and received the proceeds from the sale approximately one year before filing bankruptcy. Thus, this is not a circumstance in which the Debtor lacked knowledge of the underlying transaction when he completed the SOFA.

The omission was also material. The sale concerned the prepetition disposition of property for $25,000 and therefore bore a relationship to the Debtor's financial affairs and the disposition of his property. *See id.* The fact that the Plaintiff knew about the sale before the bankruptcy case, or that the Plaintiff's claim had already been reclassified as unsecured, does not render the omission immaterial. Materiality under § 727(a)(4)(A) does not turn solely on whether the omission caused prejudice to creditors. *Id.*

The remaining question is whether the Debtor omitted the sale with fraudulent intent. On this record, the Court concludes that the Plaintiff has not carried its burden of establishing fraudulent intent by a preponderance of the evidence.

The circumstances here differ from those in *Beaubouef* and *Sholdra*. In *Beaubouef*, the Fifth Circuit found the requisite intent where the debtor made multiple false statements and failed to correct inconsistencies and omissions when given the opportunity to do so. 966 F.2d at 178. Similarly, *Sholdra* involved materially false statements that the debtor amended only after their falsity had been revealed during his deposition. 249 F.3d at 382–83. The Fifth Circuit concluded under those circumstances that the record established fraudulent intent or reckless indifference to the truth. *Id.*

Here, the Plaintiff identified a single material omission from the Debtor's SOFA: the failure to disclose the sale of the Vehicle in response to Question 18. The record does not establish a broader pattern of false statements or omissions in the Debtor's bankruptcy filings. Moreover, the sale was not concealed from the Plaintiff at the time the Debtor filed bankruptcy. The Plaintiff had learned of the sale months earlier, had communicated with the Debtor concerning the sale, and had modified its loan to reflect the absence of collateral before the petition date. The Debtor also identified the Plaintiff as an unsecured creditor in his bankruptcy schedules. These circumstances do not excuse the Debtor's failure to disclose the sale, but they weigh against an inference that the omission was calculated to conceal the transaction from the Plaintiff or otherwise frustrate the bankruptcy process.

The Debtor subsequently amended his SOFA to disclose the sale. Under *Sholdra*, that amendment does not erase the original false oath or independently establish the absence of fraudulent intent. *See* 249 F.3d at 382. Rather, the amendment is one circumstance the Court

considers together with the remainder of the record in determining whether the Plaintiff established fraudulent intent.

Considering the totality of the circumstances, the Court finds insufficient evidence that the Debtor's single omission resulted from fraudulent intent or reckless indifference to the truth rather than mistake or inadvertence. Although the Plaintiff established that the Debtor made a knowingly false and material statement by omitting the sale, § 727(a)(4)(A) frankly requires more. Thus, because the Plaintiff failed to prove by a preponderance of the evidence that the Debtor made the false oath with fraudulent intent, the Plaintiff has not established grounds to deny the Debtor a discharge.

Accordingly, the Plaintiff's request to deny the Debtor a discharge under § 727(a)(4)(A) is DENIED.

## IV. Conclusion

For the reasons set forth above, the Court finds and concludes that the Plaintiff failed to establish that its claim should be excepted from discharge under § 523(a)(2)(A). The Court further concludes that the Debtor willfully and maliciously injured the Plaintiff's property rights by converting the Vehicle and its proceeds and that $25,000 of the Plaintiff's claim is therefore excepted from discharge under § 523(a)(6). Finally, the Plaintiff failed to establish that the Debtor made a false oath with the fraudulent intent necessary to deny the Debtor a discharge under § 727(a)(4)(A).

Accordingly,

**IT IS THEREFORE ORDERED** that the relief requested by the Plaintiff in Count I under 11 U.S.C. § 523(a)(2)(A) is DENIED; it is further

**ORDERED** that the relief requested by the Plaintiff in Count II under 11 U.S.C. § 523(a)(6) is GRANTED IN PART, and $25,000 of the Plaintiff's claim against the Debtor is excepted from discharge; it is further

**ORDERED** that the relief requested by the Plaintiff in Count III under 11 U.S.C. § 727(a)(4)(A) is DENIED; it is further

**ORDERED** all relief not expressly granted herein is DENIED; and it is further

**ORDERED** that counsel for the Plaintiff shall upload a form of final judgment in conformity herewith.

**### END OF ORDER ###**